# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **United States v. Henry Clark,** *et. al.,* | **No. 19-cr-40068-HLT-01/09** |
| **United States v. Dontae Patterson,** *et. al.,* | **No. 19-cr-40069-HLT-01/21** |
| **United States v. Kevin Henderson,** *et al.,* | **No. 19-cr-40070-HLT-01/05** |
| **United States v. Christopher Williams,** *et. al.,* | **No. 19-cr-40071-HLT-01/07** |
| **United States v. Paige Jonas** *et. al.,* | **No. 19-cr-40072-HLT-01/04** |
| **United States v. Fredrick Swinson,** | **No. 19-cr-40073-HLT** |
| **United States v. John Thompson,** | **No. 19-cr-40074-HLT** |
| **United States v. Daniel Mainville,** | **No. 19-cr-40075-HLT** |
| **United States v. Chanel Toliver,** | **No. 19-cr-40076-HLT** |
| **United States v. Damon Brown,** | **No. 19-cr-40077-HLT** |
| **United States v. Jason Simonds,** | **No. 19-cr-40078-HLT** |
| **United States v. Jerah Gasser,** | **No. 19-cr-40079-HLT** |
| **United States v. James Atkinson,** | **No. 19-cr-40080-HLT** |

## GOVERNMENT'S MOTION TO DESIGNATE CASE COMPLEX, AMEND THE STANDING PRE-TRIAL ORDER, AND TO ISSUE A SCHEDULING ORDER
### (18 U.S.C. 3161(H)(7)(A)&(B))

1

COMES NOW, the United States of America, by and through Skipper Jacobs and Stephen Hunting, Assistant United States Attorneys, and Lindsey Debenham, Special Assistant United States Attorney and moves the Court to designate the above-captioned cases as complex pursuant to 18 U.S.C. § 3161(H)(7)(A) and (B)(ii), continue the jury trial  and to issue the proposed tentative schedule for litigation. In addition, the government requests the Court amend the standing pre-trial order and grant the government's motion for protective order.   Given the number of defendants involved, as well as the timing of this motion, the government has not had an opportunity to consult independently with counsel for the defendants and requests this matter be addressed at the first scheduled status conference. amended

### REQUEST FOR RELIEF

The government is requesting relief from the Court in the following three ways:

*First,* the government seeks a continuance of the trial in the above-captioned case(s) beyond the seventy-day requirement in 18 U.S.C. 3161 pursuant to the ends of justice provision of 18 U.S.C. 3161(h)(7)(A), namely based on the complex case factor.  The government requests ruling be reserved until the first status conference in the case(s). (*See Issue I, infra*).

*Second,* the government moves for the adoption of the proposed scheduling order for litigation following commentary and discussion at the first scheduled status conference in the above-captioned cases. The government requests the Court reserve ruling until the first status conference in the case(s). (*See Issue I, infra*).

*Third*, the government requests the District of Kansas standard pretrial order be modified in three ways (*See Issue II, infra*):

(a) the standard pretrial order requires the government to produce discovery within thirty (30) days of arraignment.  This schedule is likely unfeasible for the reasons cited herein.  The government requests the production obligation be modified to within sixty (60) days of arraignment, acknowledging that the instant prosecutions will likely involve "rolling discovery" past the sixty-day initial disclosure;

(b) scheduling and status conferences are generally set within 45 days of arraignment.   Given the volume of defendant's involved in the instant prosecution, the government requests the Court, at its discretion, stagger the scheduling and status conferences such not more than 20-25 indicted persons are required to in attendance on any given date.

(c) the government seeks the issuance of a protective order pursuant to Federal Rule of Criminal Procedure 16(d) and seeks to defer or redact discovery as outlined in the government's written *ex parte* statement for the Court's *in camera* review.

The government does not request ruling be reserved until the first status conference on this third part.  Failure to rule on subpart (a), the discovery deadline adjustment, will cause the government to likely be in violation of the pretrial order if a ruling is not rendered before the thirty (30) day production deadline. Subpart (b) is of a logistical nature and does not, in the government's opinion, affect the rights of

any defendant.  The government further seeks ruling on its request for a protective order prior to the first scheduled status conference to expedite the discovery process in the above-captioned cases.  The government requests a ruling as unopposed if no objections from defendant(s) are filed within 14 days of the filing of the instant motion.

## I. MOTION FOR CONTINUANCE AND ADOPTION OF PROPOSED LITIGATION SCHEDULE

### STATUTORY AUTHORITY

*A. 18 U.S.C. 3161(h)(7) (ends of justice).*

The Speedy Trial Act ("the Act") grants a criminal defendant the right to a trial in seventy days.  *See generally* 18 U.S.C. 3161.  However, that right is not absolute and is subject to certain exceptions.  *See e.g.* 18 U.S.C. 3161(h).  One such exception involves delay resulting from continuances based on the "ends of justice."  18 U.S.C. 3161(H)(7)(A).

The ends of justice provision provides flexibility in the Act given the wide variances in criminal cases.  *United States v. Toombs*, 574 F.3d 1262, 1276 (10th Cir. 2009) (quoting *Zedner v. United States*, 547 U.S. 489, 497 (2006)) (Tymkovich, J., dissenting).  In granting an ends of justice continence, the district court must balance the factors in 18 U.S.C. 3161(h)(7)(B) and make findings on the record.  *See also Id.* at 1272.  Notably, the district court must provide "an explanation of why the mere occurrence of the event identified by the party as necessitating the continuance results in the need for additional time."  *Id.* at 1271 (citations omitted).

Particularly relevant here is the "complex case" factor. *See* 18 U.S.C. 3161(h)(7)(B)(ii). In determining whether to grant an ends of justice continuance, the district court is to consider:

> Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

*Id. See also United States v. LoFranco*, 818 F.2d 276, 277 (2d Cir. 1987). In addition to the general parameters of the complex case provision, issues related: to the volume and scope of discovery; the number of defendants and period of the alleged criminal activity; the number of witnesses, extensiveness of videos and images, and potential need for forensic examinations; and discovery production, serve as examples of facts bearing on a complex case designation. *United States v. Fuentes*, 2011 WL 5233079 at *2 (D. NM June 14, 2011) (unpublished), *United States v. Garcia*, 221 F.Supp.3d 1275, 1287-88 (D. NM 2016), *United States v. Hopson*, 2014 WL 2704639 at *1 (D. Co. June 13, 2014) (unpublished), *United States v. Perez-Alcala*, 2012 WL 2798797 at *2 (D. Kan. July 9, 2012 (unpublished),

Here, the United States submits that the facts support a complex case designation and non-standard litigation schedule.

## A. 18 U.S.C. 3161(h)(6) (the codefendant exclusion).

Many of the above-captioned cases include joined defendants alleged in drug conspiracies. Title 18 U.S.C. Section 3161(h)(6) excludes a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time trial

has not yet run and no motion for severance has been granted.  In a properly joined case, the calculation of speedy trial is based on the last defendant to be arraigned. *See* 18 U.S.C. 3161(h)(6); *United States v. Margheim,* 770 F.3d 1312 (10th Cir. 2014); *United States v. Stiger,* 413 F.3d 1185, 1197 (10th Cir.), *overruled on other grounds*, *United States v. Ellis*, 868 F.3d 1155 (10th Cir. 2017).

In determining whether such a delay is "reasonable" the district court considers: (1) whether the defendant is in custody; (2) whether the defendant has zealously pursued a speedy trial; and (3) whether joinder serves the purpose of 3161(h)(6)'s exclusion, that is, to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trail.  *United States v. Margheim*, 770 F.3d 1312 (10th Cir. 2012).  "When delay is reasonable, an exclusion for delay attributable for one defendant is applicable to all co-defendants." *United States v. Thomas*, 749 F.3d 1302, 1308 (10th Cir. 2014).  In addition, when an ends-of-justice continuance is granted as to one defendants under 3161(h)(7), it is attributed to all joined codefendants under 3161(h)(6) as long as it is properly analyzed for reasonableness. *United States v. Cortes Gomez,* 926 F.3d 699, 704 (10th Cir. 2019).

While no single factor controls, the efficiency factor can override the custody and zealous pursuit factors.  *See United States v. Cortes-Gomez*, 926 F.3d 699 (10th Cir. 2019).    In the Tenth Circuit, there is a "strong presumption favoring trying properly joined defendants together."  *Id.* at 705 (quoting *United States v. Zar,* 790 F.3d 1036, 1043 (10th Cir. 2015)).

<u>**FACTS**</u>

The following facts include several estimates. These estimates constitute the government's good-faith attempt at analyzing a very large volume of materials and predicting the occurrence, or nonoccurrence of, a considerable number of variables. The government's estimates are intended for planning purposes and do not necessarily constitute definitive assertions.

1)      The above-captioned cases stem from a singular investigative effort that began in or before 2016 and continued up to the return of Indictments on August 21, 2019. The scope of the indicted criminal conduct spans the period of in or before January 2016 to in or after August 2019. While the indictments in the above-captioned cases allege specific conduct, during specific times, concerning specific defendants, the evidence and discovery in this case involves a much broader common core of activity with overlapping associations. Stated differently, much of the evidence the government would rely upon in any one of the above-captioned cases would, in the government's estimation, be relevant and admissible in all of the other case(s).

2)      The investigation was primarily handled by the Riley County Police Department ("RCPD") and the Drug Enforcement Administration ("DEA") but included assistance from the FBI, ATF, United States Postal Inspection Service, Geary County Sherriff's Office, and other state or federal entities;

3)      The investigation involves the bulk distribution of numerous controlled substances, including heroin, fentanyl, acetyl fentanyl, MDMA, marijuana,

methamphetamine, and prescription pills, as well as firearm offenses, felonious use of communication facilities,  and obstruction related charges.

4)     The above-captioned cases involve 54 indicted defendants and touch upon as many, if not more, unindicted coconspirators;

## DISCOVERY

5)     The initial batches of discovery is estimated to contain 890 Gigabytes and roughly consists of 200,000 independent files subdivided in 1,660 folders.  This initial production will be in two parts and is expected to constitute over 90% of all the anticipated discovery in this case, Some of the specific discovery items include:

a.     Approximately 3,500 pages of police reports;

b.     Over 2,000 pages of pleadings related to State and federal judicial process including search warrants, 2703(d) orders, and 2518 intercept orders. By way of exemplar, as of a review conducted on August 1, 2019, there were 64 State search warrants issued and executed in 2019 alone. In addition, the government filed five applications for TIII intercepts, each submitted affidavit is at or over 100 pages in length, not including the corresponding applications, orders, progress reports, and sealing documents;

c.     Social Media downloads from over 25 accounts ranging in length from less than one hundred pages to over 1000 pages per account.  As an exemplar, on August 1, 2019, the government reviewed the page length of seven randomly selected returns out of the approximately 25 accounts (some of which were searched  more  than  once)  and  calculated  them  to  contain  15,418  pages  of

materials. One particular Facebook Account reviewed by random selection contained over 8,000 pages;

d.       Numerous forensic cellphone downloads ranging in length from a *de minimus* amount to several thousand pages.  One particular forensic download converted to PDF form is 34,285 pages in length.   While this particular download is somewhat of an anomaly, many of the cellphone downloads exceed 1,000 pages and most exceed 100 pages.

e.       Wire and electronic intercepts involving six phones, with each phone monitored for a period of at least two weeks up to over one month.  This discovery involves over 2,000 pages of call and SMS/text transcripts with over 1,000 intercepted wire transmissions (audio recorded) deemed pertinent to the investigation;

f.       Returns related to 38 Grand Jury subpoenas including numerous financial records.  Most of the financial information involves wire transactions and vary in quantity of data.

6)       In addition to the specifically described items, the government's discovery includes toll data, pen-register and trap and trace data, GPS tracking data, intelligence reports and database information, expert witness reports (including cause of death analysis), thousands of photographs, videos of incidents, laboratory analysis reports, and criminal history documentation;

7)       To aid the Court and counsel's understanding of the volume of discovery in this case, on August 7, 2019, AUSA Jacobs conducted a comparison review of six (6)

previously adjudicated multi-defendant drug conspiracies prosecuted by AUSA Jacobs, and others.  These cases were assessed to be of average to above-average complexity. The volume of discovery in those cases were estimated at: 922MB; 4.33 GB; 8.16GB; 53.9GB; 20.2GB; and 74.4 GB.  The average size for the sample is 26.98GB.  The volume of the *initial* discovery production in the instant prosecution is thirty-two (32) times larger than the average for the sample.

8)      The volume of discovery exceeds the government's ability to bulk produce the discovery in-house as it exceeds the network capability.  As such, the discovery has to be processed by Department of Justice entities outside the District of Kansas, namely the Litigation and Technology Support Center ("LTSC") in Columbia, South Carolina. Upon receipt by the LTSC, and placement in the processing que, the LTSC has an average processing time of 15 days.

9)      The United States has made pre-charging coordination with the CJA resource attorney to seek appointment of a CJA National Discovery Coordinator to liaise with the USAO in discovery related matters.  Upon motion of defendants, and CJA NDC appointment, the USAO will produce discovery materials to the Discovery Coordinator.  The undersigned understands that it then takes between two and three weeks for the Discovery Coordinator to produce the materials to individual defense attorneys.  As such, the government anticipates that the initial production of discovery will not be complete until late-September to early-October 2019.

10)     Based on the undersigned's experience, as well as discussion with fellow government attorneys, and local defense counsel, the government approximates that

a full review of the discovery by defense counsel could reasonable require more than 500 hours.  However, the government largely leaves that assessment to the judgment of counsel in this case.

## MOTION PRACTICE

11)     The bulk of the government's seizures in this case were the result of judicially approved actions – namely search warrants and Title III authorizations.  However, the government cannot forecast with any degree of certainty whether these processes, or alternatively, evidence seized outside of these processes, including confessions, will be subject to pretrial litigation.

Given the investigative overlaps of the above-cited cases, particularly with regard to Title III interceptions, the admissibility of evidence in one case may correspond to the admissibility of evidence in another case.  By example, wire and electronic  intercepts on phones used by defendants in case number 19-cr-40069-HLT involved communications with defendants in case number 19-cr-40070-HLT an vice-versa.  As a result, litigation on any one issue (such as a motion to suppress in 19-cr-40069) could result in motions for joinder and multiple participants to internal to the case and external to the case. This in turn creates a reasonable likelihood of expanded timelines for the filing of motions, responses, evidentiary hearings, and resulting rulings – as well as delay in the assessment of those rulings.

12)     Similarly, given the common core of evidence in this case, the common core of defendants, and the manner in which the evidence was obtained, Fourth and Fifth Amendment challenges, particularly those unfavorable to the government, will likely

require a broader and more intensive litigation and analysis of standing and derivative evidence issues than in typical matters before this Court.

## TRIAL

13)    At this stage of the litigation, it is difficult to forecast with any definitive certainty the length of a trial for any one of the above-captioned cases based on a number of variables including, number of defendants; stipulations to evidence, or lack thereof; joinder or severance of defendants; motion practice, including Federal Rule of Criminal Procedure 12 motions or motions *in limine*; etc.  Depending on these variables, the government believes a trial(s) could require twelve (12) weeks or more.

14)    An additional trial variable, dependent upon a number of other variables, involves the number of witnesses and exhibits the government would rely upon at any given trial.  However, the government estimates it could call over 70 potential witnesses, including law enforcement officers, civilians, and experts in the medical and scientific communities.  In addition, a review conducted on April 10, 2019, concerning investigative efforts between December 2016 and March 2019, resulted in the identification of 49 independent acquisitions/seizures of controlled substances and/or firearms.  Most of these incidents include audio and/or video recordings, photographs, the seized property, as well as some form of expert analysis.

## ARGUMENT

The government submits that a trial in strict conformity with the seventy-day requirement of the Speedy Trial Act would not be in the interest of the public or the defendants.  The volume of discoverable materials to review, as well as the number

of defendants, and potential length of trials render a trial beginning on or before seventy days after arraignment untenable.  The government submits that, even with its advanced knowledge of the facts of the case, preparing for and conducting a trial within seventy days would be extremely difficult, at best, given the complexity of this litigation.  The government further supports a finding that requiring the defendant(s) to proceed to trial in seventy days or less would constitute a manifest injustice and likely deprive the defendant of the effective assistance of counsel.  However, the government does note the nature of the prosecution requires an independent assessment for each charged case and defendant.

Further, the government submits that for the foregoing reasons, an ends-of-justice continuance attributable any defendant, in the cases with joined defendants, would be properly excludable under 18 U.S.C. 3161(h)(6), provided, after appropriate inquiry, the Court were to conclude the delay is reasonable.

### PROPOSED LITIGATION SCHEDULE

Based on the foregoing, and subject to the Court's availability, as well as, the advice and consent of counsel, the government proposes the following initial schedule of litigation:

| Hearing / Event | Date |
|---|---|
| Scheduling and Status Conference | Arraignment[1] +30 to +45 days |

---

[1] For cases involving multiple defendants joined in jointly undertaken criminal conduct, the government's reference to "arraignment" concerns the arraignment date for the last defendant to be arraigned in the case.  *See* 18 U.S.C. 3161(h)(6) (excluding reasonable periods of delay based on joinder of defendant whose time for trial has not run) *and United States v. Margheim,* 770 F.3d 1312 (10th Cir. 2014); *See also United States v. Stiger,* 413 F.3d 1185, 1197 (10th Cir.) (In a conspiracy trial, the presumption in the Tenth Circuit is that all persons charged together should be tried together in a single trial), *overruled on other grounds, United States v. Ellis,* 868 F.3d 1155 (10th Cir. 2017).

| Pretrial Motion Deadline | Arraignment +210 days |
|---|---|
| Response Deadline | Arraignment +240 days |
| Motion Hearing (set for one week) | Arraignment +270 days |
| Post-Hearing Status Conference | Arraignment +330 days |
| Deadline for *in Limine* Motions | Arraignment +360 days |
| Response to *in Limine* Motions | Arraignment +375 days |
| Pre-Trial Conference and *in Limine* Hearing | Arraignment +390 days |
| Trial | Arraignment +405 days |

The government submits, in its assessment, that the proposed schedule affords the parties a timeline that is sufficient but not greater than necessary to effectively litigate the above-captioned cases.  The government's rationale is as follows:

(a) Scheduling and Status Conference.  The Court's standard pretrial order sets a status conference within 45 days of arrangement. In ordinary circumstances, that would set status conferences for all of the above-captioned cases on the same date. Given the volume of defendants, and the timing of arraignments, the government does believe the Court has the logistical capacity to conduct status conferences for all of the indicted defendant's on the same date, and suggests a staggered schedule for status conferences.  *See Issue 2 infra.*

(b) Motion Deadlines.   As discussed above, the government's assessment is that 500 hours or more would be required to review all of the materials in this case, consult with client(s), discuss with the government, conduct research, and file

14

pretrial motions. A 210-day period between arraignment and motion deadlines provides the potential for 1200 work hours (based on a 40-hour work week). Based on the government's assessments, a 210-day period between arraignment and motions deadlines would be the minimum amount necessary to accomplish tasks associated with this case will attending to competing work obligations.

(c) Response Deadlines. The commonly assigned deadline is fourteen (14) days. Given the number of defendants involved in this prosecution, the government believes a thirty-day response deadline is the minimum required to effectively respond to dispositive motions.

(d) Motion Hearing. The government submits that a thirty-day period between response deadlines and a motion hearing is the minimum amount required to subpoena witness, prepare for evidentiary presentations, and allow the Court time to review the pleadings and conduct independent research. The government recommends the Court set aside four (4) days for evidentiary hearings in order to provide sufficient time to ensure all matters can be litigated in one week, while preserving the Court's ability to conduct other civil or criminal hearings.

(e) Post Hearing Status Conference. Title 18, United States Court, Section 3161, provides the Court a period not to exceed thirty days to review and render rulings on motions. The government believes this to be the minimum amount required given the volume of materials and number of defendants. As such,

the government's schedule affords the Court the full thirty days to review and decide the motions and an additional thirty days for the parties to consider the impact of the Court's ruling, submits motions for reconsideration if necessary, submit interlocutory appeal if necessary, and otherwise prepare for the trial phase of the litigation. A post-hearing status conference will further allow the parties to adopt or modify the proposed schedule.

(f) *Limine* Motions and Responses.   The proposed schedule affords thirty days following the post-hearing status conference to research and draft *limine* motions, fifteen days to respond, and fifteen days for the Court to review the pleadings, conduct independent research, and prepare for presentations.   The schedule further allows for a thirty-day period for the Court to hear evidence, issue ruling(s), and for the parties to finalize trial preparations.   The government estimates this to the be minimum amount of time required to accomplish those tasks.

### ALTERNATIVE LITIGATION SCHEDULE

The government submits that pretrial motions are not always filed in criminal cases, and that the proposed scheduled allocates a significant period to resolve pretrial litigation issues.   In the event that *no* pretrial motions are filed in the above cases, the government proposes an alternative schedule.

| Hearing / Event | Date |
|---|---|
| Scheduling and Status Conference | Arraignment[2] +30 to +45 days |

---

[2] For cases involving multiple defendants joined in jointly undertaken criminal conduct, the government's reference to "arraignment" concerns the arraignment date for the last defendant to be arraigned in the case.   *See* 18 U.S.C.

| Pretrial Motion Deadline | Arraignment +180 days |
|---|---|
| Deadline for *in Limine* Motions | Arraignment +210 days |
| Response to *in Limine* Motions | Arraignment +225 days |
| Pre-Trial Conference and *in Limine* Hearing | Arraignment +240 days |
| Trial | Arraignment +270 days (or Arraignment +240 days if no *in limine* motions are filed. |

The timing for the alternative schedule is based on the same reasons and rationale as the proposed schedule, with the exception that timing related to pretrial motion litigation has been omitted, and 30 days for the researching, drafting, and editing of pre-trial motions is subtracted.

<u>CONCLUSION</u>

Based on the foregoing facts and conclusions, the government submits that a complex case designation is appropriate in the above-cited cases. The government requests that this Court continue the trial(s) in the above-cases outside the seventy-day period provided in 18 U.S.C. 3161. The government further requests the adoption of the proposed litigation schedule. The government however requests the Court reserve ruling on this matter until the first scheduling and status conference(s) in the above-captioned cases so that counsel for defendants can note their objections, concurrence, or alternative proposals.

---

3161(h)(6) (excluding reasonable periods of delay based on joinder of defendant whose time for trial has not run) *and United States v. Margheim,* 770 F.3d 1312 (10th Cir. 2014); *See also United States v. Stiger,* 413 F.3d 1185, 1197 (10th Cir.) (In a conspiracy trial, the presumption in the Tenth Circuit is that all persons charged together should be tried together in a single trial), *overruled on other grounds, United States v. Ellis,* 868 F.3d 1155 (10th Cir. 2017).

**II. Motion for Amendment to the Pretrial Order.**

The Court's standard pretrial case management order directs the government to the extent possible to complete discovery within thirty (30) days after arraignment, and subject to certain exceptions. *See e.g. United States v. Gullick*, 18-cr-40113-HLT (CM/ECF Doc. 11). The government intends to make good-faith attempts to meet the thirty (30) day requirement. As evidenced above, the government has taken several proactive steps towards facilitating a rapid and efficient discovery process. However, given technological limitations, the volume of materials, and the number of required duplications, the government anticipates a high probability it will not be able to produce the materials on hand to all defendants within thirty (30) days. In support of this assessment the government incorporates the factual submissions and estimations described above. As such, the government submits that a production deadline of sixty (60) days is reasonable.

Second, the customary procedure is to issue a criminal case management order that sets a status conference within 45 days of arraignment. At this time, the government cannot anticipate the number of defendants that will be in custody versus on release at the first status conference. Further, it is anticipated that most, if not all, of the defendants in the above-cases will be arraigned in close temporal proximity to one another. If all of the above-cited cases are set for a status conference on the same date (roughly 45 days post arraignment) the government anticipates the number of defendants would exceed the logistical capacity of the Court. As such, the government requests the Court stagger status hearings during the 20 days to 45 day

post-arraignment period.  To ensure an unnecessary strain is not imposed on the Court's facilities, the government recommends not more than 20 in-custody defendants be scheduled for court on any given date.

Third, the government requests a protective order pursuant to Rule 16(d) of the Federal Rules of Criminal Procedure.  Rule 16(d) allows for the Court to grant an order denying, deferring, restricting, or providing other discovery relief based on the submission of a *ex parte* written statement of facts to be reviewed *in camera*.  The government intends to submit its *ex parte* statement to the Court following the filing of the instant motion.

The government submits its requests for modification of the pretrial order are reasonable and rationally related to the basis for the request.  As such, the government requests its motion to modify the pretrial order be granted.

Conclusion

It is therefore requested that the Court continue trials beyond the seventy-day requirement based on a complex case finding in furtherance of the ends of justice. The government requests the motion be taken under advisement pending the first status conference.

It is further requested that the Court adopt the governments proposed litigation schedule. The government requests the motion be taken under advisement pending the first status conference.

It is further requested that the Court modify the standard pretrial order as requested.  The government requests ruling not be reserved and an order issue,

unless counsel file an objection within fourteen (14) days of filing of the instant motion.

It is further requested that the Court issue a protective order pursuant to Rule 16 of the Federal Rules of Criminal Procedure pending review of the government's *ex parte* submission.

Respectfully submitted,

s/Skipper S. Jacobs
Skipper S. Jacobs, #26848
Assistant United States Attorney
444 SE Quincy, Suite 290
Topeka, KS 66683
Phone: (785) 295-2850
Fax: (785) 295-2853
Skipper.jacobs@usdoj.gov

s/Stephen Hunting
Stephen Hunting, # 21648
Assistant United States Attorney
444 SE Quincy, Suite 290
Topeka, KS 66683
Phone: (785) 295-2850
Fax: (785) 295-2853

s/Lindsey Debenham
Lindsey Debenham, #27574
Special Assistant United States Attorney
444 SE Quincy, Suite 290
Topeka, Kansas 66683
Phone: (785) 295-2850
Fax: (785) 295-2853

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of August, 2019, I electronically filed the foregoing Motion with the Clerk of the Court by using the CM/ECF system which will send an electronic copy to counsel of record.

s/Skipper S. Jacobs
Skipper S. Jacobs, #26848
Assistant United States Attorney